## IN THE CIRCUIT COURT FOR BALTIMORE, MARYLAND

**DEAN C. MARCHESE**                   *
10017 Prestwich Terrace              *
Ijamsville, MD  21754                *
                                     *
      Plaintiff                    *
                                     *
**v.**                               *
                                     *
                                     *    Case No.: _____
**JP MORGAN CHASE BANK, N.A.**       *
35th Floor                *
270 Park Ave.                        *
New York, NY 10017                   *
                                     *
Serve On:                            *
                                     *
      The Corporation Trust        *
         Incorporated, Resident   *
         Agent                    *
                                     *
      351 West Camden Street       *
      Baltimore, MD  21201         *
                                     *
      Defendant                    *

## COMPLAINT

### &

### REQUEST FOR JURY TRIAL

Plaintiff Dean C. Marchese ("Mr. Marchese"), through his undersigned counsel files this Complaint and Request for Jury Trial against Defendant JP Morgan Chase Bank, NA and says in support:

## I. INTRODUCTION

1. The underlying matter involves just one thousands of other similar situations across the State where homeowners are (i) seeking to change and modify their

1

current mortgage loans without requesting additional credit, (ii) complying with all requests of their servicer/lender in making the requests, but (iii) all their reasonable steps are ignored in bad faith and the homeowners are left with no other option but to seek the assistance of the Courts.  To add insult to injury, many servicers implemented (iv) bogus signature practices to fast track foreclosures, like the underlying matter, without regard to the integrity of the judicial system and basic due process.

2. These claims concern the utter failure of Defendant JP Morgan Chase Bank, N.A. ("Chase") to comply with Maryland law related to Mr. Marchase's reasonable and appropriate requests to modify his mortgage loan subject to this action without seeking additional credit.

3. Many, but not all, Maryland homeowners facing foreclosure have reasonable and sustainable solutions to their mortgage situation.  Mr. Marchase does have a sustainable solution, yet the Defendant, by and through their authorized agents and employees, are threatening a wrongful foreclosure—otherwise known as an adverse action—on Mr. Marchase's home and property without having first even complied with the law.

4. Further, and very significant to Mr. Marchase, but for the botched loss mitigation efforts by the Defendant and its failure to honor its own authorized reinstatement quote, Mr. Marchase has suffered and continues to suffer direct and proximate damages resulting from the unresolved mortgage situation.

5. Further, if the foreclosure sale of Mr. Marchase's home and property proceeds, Mr. Marchase will sustain significantly greater economic damages and losses as

2

a result through further loss of their home, emotional damages as a result of those proceedings and the Defendant's actions (directly and indirectly through its authorized agents and affiliates).

6. Finally, this action also seeks declaratory relief that MD LEGIS 322 (S.B. 562) (2010), is unconstitutional under the federal and state constitutions in that the legislature attempted by the legislation to do something to which it was expressly not permitted to do—i.e. to cure a provision of Mr. Marchase's recorded Deed of Trust that was void as a matter of law and to interfere into a pre-existing contract between private parties.

## II. PARTIES

7. Mr. Marchese is a resident of the State of Maryland and is the owner of the real property commonly known as 10017 Prestwich Terrace in Ijamsville, Maryland ("the Property").

8. Defendant JP Morgan Chase Bank, National Association is organized under the laws of the State of Delaware and services hundreds of mortgages throughout the State of Maryland and Baltimore City.

9. Not named as a party to this action the law firm of Bierman, Geesing, Ward, and Wood has three principals, Carrie Ward, Howard Bierman, and Jacob Geesing, which at all times described herein acted as the authorized attorneys of Defendant Chase for certain foreclosure proceedings described herein.

## III. JURISDICTION & VENUE

10. This Court has jurisdiction asserted because Defendant transacts business and perform work and services in Maryland and each has availed themselves to the jurisdiction of this Court through their appointed agents including Carrie Ward, Howard Bierman, and Jacob Geesing of the law firm Bierman, Geesing, Ward, and Wood, and other foreclosure trustees in this Court.

11. Declaratory and injunctive relief are available pursuant to Md. Code Ann., §§ 3-401-3-415.

12. Venue is appropriate in this Court because the Defendant conduct business within Baltimore City, Maryland.

## IV. FACTS

### A.    The Foreclosure Crisis

13. Over the last four years, Maryland and, indeed, the United States have been in a foreclosure crisis. Recent news reports have established that one in ten American homes is at risk of foreclosure.

14. The number of Maryland properties with foreclosure filings has increased substantially throughout the last four years.

15. Increased foreclosures have a detrimental effect not just on the borrowers who lose unique property and face homelessness, but also on the homes surrounding a foreclosure and, perhaps, neighborhoods that suffer decreased property values and municipalities that lose tax revenue.

16. The foreclosure crisis is far from over. Economists predict that interest rate resets on the riskiest of lending products will not reach their zenith. *See* Eric

4

Tymoigne, Securitization, Deregulation, Economic Stability, and Financial Crisis, Working Paper No. 573.2 at 9, Figure 30 *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1458413 (citing a Credit Suisse study showing monthly mortgage rate resets).

17. Since the commencement of the crisis, revelations of bogus, false, and deceptive "robo signing" have come to light involving national lenders and mortgage servicers. In Maryland the illegal "robo-signing" issue has even come to the forefront because attorneys and substitute trustees, including those acting on behalf of Saxon and Ocwen have admitted that they filed bogus documents in hundreds of foreclosure cases filed in state courts.

### B. Maryland's Response to the Foreclosure Crisis

18. In 2007 at the beginning of the crisis, Governor O'Malley convened a task force of representatives to address the crisis that was then underway. The Maryland Homeownership Preservation Task Force produced a report which aptly summarized the devastating effect of foreclosures on the community as follows:

Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of foreclosures in Chicago in 2005 estimated that a single foreclosure costs city government up to $5,000 or more.

Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.

Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure, according to information from St. Ambrose Housing Aid Center, Inc. The banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report at 12 (November 29, 2007) *available at*

http://www.gov.state.md.us/documents/HomePreservationReport.pdf (footnotes omitted).

19. To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court. *See Id.* at 40-43.

20. In response to the expanding foreclosure crisis and the Task Force Report, the General Assembly introduced and passed several bills during the 2008 legislative session to change Maryland's foreclosure process and curb certain predatory real estate processes. These bills were passed with nearly complete bi-partisan support. As summarized in the General Assembly's 90 Day Report for the 2008 session:

Until [2008], Maryland's foreclosure process, from the first foreclosure filing to final sale, had been among the shortest in the nation. Maryland is

6

a quasi-judicial State, meaning that the authority for a foreclosure sale is derived from the mortgage or deed of trust, but a court has oversight over the foreclosure sale process. Most mortgages or deeds of trust include a "power of sale" (a provision authorizing a foreclosure sale of the property after a default) or an "assent to decree" (a provision declaring an assent to the entry of an order for a foreclosure sale after a default). Under the Maryland Rules, it was not necessary to serve process or hold a hearing prior to a foreclosure sale pursuant to a power of sale or an assent to a decree. Consumer advocates contended that the short timeframes and weak notice provisions in State law seriously limited a homeowner's options to avoid foreclosure by, for example, working out a payment plan with the lender or selling the house. In addition, filing a request for an injunction to stop the sale is expensive, time consuming, and not a realistic option for most homeowners.

***Senate Bill 216 (Ch. 1)/House Bill 365 (Ch. 2)***, emergency legislation that took effect April 4, 2008, make a number of significant changes to the foreclosure process in Maryland for residential real property. "Residential property" is defined under the Acts to mean real property improved by four or fewer single-family dwelling units. Except under specified circumstances, the Acts prohibit the filing of an action to foreclose a mortgage or deed of trust on residential property until the later of 90 days after a default in a condition on which the mortgage or deed of trust states that a sale may be made or 45 days after the notice of intent to foreclose required under the Acts is sent.

. . . .

***Senate Bill 217/House Bill 360*** define "mortgage fraud" as any action by a person made with the intent to defraud that involves:

• knowingly making, using, or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that it will be relied upon by a mortgage lender, borrower, or any other party to the lending process;

• receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from the aforementioned actions;

• conspiring to violate either of the preceding provisions; or

• filing or causing to be filed in the land records in the county where a residential real property is located any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Under the Acts, the "mortgage lending process" includes the solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan, as well as the notarizing of any document in connection with a mortgage loan.

Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) *available at* http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

21. The Maryland Court of Appeals recently adopted in October 2010 an emergency rule to deal with the robo-signing issue based upon the recommendation of the Standing Committee on Rules of Practice and Procedure.  Writing for the Committee the Honorable Alan M. Wilner explained:

The need for these changes emanates from recent revelations regarding the filing in residential foreclosure actions of affidavits as to which the affiant either did not have sufficient knowledge of the facts stated in the affidavit to validly attest to their accuracy or did not actually read or personally sign the affidavit. Preliminary audits have shown that hundreds of such affidavits have been filed in Maryland circuit courts. Up to this point, courts, with good reason and really of necessity, have relied on the accuracy of affidavits, especially when filed by attorneys, unless there is something on the face of the document to suggest otherwise or the validity of the affidavit is challenged. Evidence that has recently come to light, largely through admissions under oath by the affiants themselves, has shaken the confidence that the courts have traditionally given to those kinds of affidavits.

In the Committee's view, the use of bogus affidavits to support actions to foreclose liens on property, apart from prejudice to the homeowners, constitutes an assault on the integrity of the judicial process itself.

Letter from A. Wilner to the Court of Appeals, Oct. 15, 2010.

22. In further response to the foreclosure crisis, Maryland Commissioner of Financial Regulation required for its licensees "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the…servicing…of any mortgage loan, including, but not limited to…(3) The duty when servicing mortgage loans to: (a) Promptly provide borrowers with an accurate accounting of the debt owed when borrowers request an accounting; (b) Make borrowers in default aware of loss mitigation options and services offered by the licensee; (c) Provide trained personnel and telephone facilities sufficient to promptly answer and respond to borrower inquiries regarding their mortgage loans; and (d) Pursue loss mitigation when possible." Md. Code Regs. 09.03.06.20.

## C.   Mr. Marchase's Mortgage Loan and Deed of Trust Subject to this Transaction

23. Mr. Marchese and his family including his wife and children reside at the Marchese Property located at 10017 Prestwich Terrace in Ijamsville, Maryland.

24. On March 7, 2006,  Mr. Marchese refinanced his mortgage with a new lender Steward Financial Inc.  As part of this transaction, Mr. Marchese, entered into as additional security a Deed of Trust.  The Deed of Trust between Steward Financial Inc. and Mr. Marchese was filed in the land records of Frederick County, Maryland at Book 6071, Page 708 and recorded on and about June 15, 2006.

25. The trustee named on the contract between Mr. Marchese and Steward Financial Inc. was ELTG, LLC.  ELTG, LLC is not a natural person.

9

26. The March 7, 2006 Deed of Trust was of record before consideration of and the enactment of MD LEGIS 322 (S.B. 562) (2010).

27. Like thousands of other Maryland families the Marchese Family's income was significantly reduced during the recent economic depression. In addition the toxic mortgage provided to them by WaMu (as the predecessor in interest to Defendant Chase), a payment option loan, adjusted by nearly doubling the payment claimed to be owed by Mr. Marchese. As a result, Mr. Marchese began to seek a modification of his mortgage with their then mortgage servicer Defendant Chase.

28. On or about July 11, 2009 Mr. Marchese and Chase entered into a trial modification of the mortgage loan.

29. Mr. Marchese made all the trial payments required by the modification from July 13, 2009 through April 1, 2010.

30. However, on or about May 5, 2010, Chase informed Mr. Marchese that it would no longer honor his modification and that he would have to reapply for a loan modification. Chase's representative told Mr. Marchese on April 29, 2010 that he needed more income in order to qualify which was a false statement as there is no such requirement at the time and Mr. Marchese had enough income at the time (approximately $10,000.00 a month gross) to afford a modified payment under the modification programs offered by Chase at the time.

31. On May 12, 2010, Mr. Marchese applied again for a modification of his mortgage with Chase and provided Chase will all the information Chase requested and

required for the application.  This application was sent by Mr. Marchese through the USPS by certified mail.

32. In response to his May 12, 2010 application, Chase simply ignored Mr. Marchese's requests and proceeded to institute bogus foreclosure proceedings through its agents Carrie Ward, Howard Bierman, and Jacob Geesing.  In addition to the action not being proper since Chase had not properly considered Mr. Marchese.

33. On or about June 2, 2009, Chase, through its authorized agents, Bierman, Geesing, Ward, and Wood, LLC, commenced a foreclosure against Mr. Marchese and his home in the Circuit Court of Frederick County, Maryland. However, the foreclosure action which was filed with materially bogus affidavits and papers which were not signed or even properly notarized as they appeared to be to the court.  This conclusion is based upon:

   a. The admissions of certain employees of Bierman, Geesing, Ward, and Wood, LLC, including Jacob Geesing, that he did not sign the testimony presented to multiple courts even though the papers and testimony represented that he signed the papers and testimony used to acquire the jurisdiction of the court.

   b. The Maryland Secretary of State has decertified certain Bierman, Geesing, Ward, and Wood, LLC notaries including Rodnita Moulton who falsly notarized Jacob Geesing's bogus signatures in the papers and affidavits in the Marchese foreclosure action.

34. Still trying to do his best to bring his loan current and seek a modification, Mr. Marchese made two good faith payments to Chase on October 1, 2010 in the amount of $3,608.39 and $4,078.75.  Chase rejected these good faith payments.

35. Still trying to do his best to bring his loan current and seek a modification, Mr. Marchese requested in October 2010 a reinstatement amount from Bierman, Geesing, Ward, and Wood, LLC as the authorized agent of Defendant Chase. As a matter of Maryland law, Mr. Marchese and any other homeowner in foreclosure has an absolute right to reinstate their loan prior to the contemplated foreclosure sale.

36. On October 27, 2010, Bierman, Geesing, Ward, and Wood, LLC provided Mr. Marchese with a written reinstatement quote which by its express terms was valid through November 11, 2010.  The reinstatement figure requested in the quote was $6 5,466.64 and the quote stated that the funds needed to be by "[c]ash, certified check or money order payable to JPMorgan Chase Bank National Association."

37. In reasonable reliance of the October 27, 2010 reinstatement quote identified above, Mr. Marchese presented to Bierman, Geesing, Ward, and Wood, LLC on or about November 9, 2010 through the USPS certified mail, a cashier's check of certified funds in the amount of $65,466.64 made payable to JP Morgan Chase Bank National Association.  Bierman, Geesing, Ward, and Wood, LLC accepted the funds.

38. However, on November 22, 2010, Chase returned the certified funds to Mr.

Marchese falsely stating "[f]unds insufficient to cure default."  The statement was

knowingly false for the following reasons:

   a.  Since Mr. Marchese had provided the exact sum requested in writing by

   Defendant Chase's authorize agent Bierman, Geesing, Ward, and Wood,

   LLC.

   b.  Mr. Marchese spoke to Defendant Chase's representative, by telephone

   on November 23, 2010 at 1:28PM in which she admitted to Mr. Marchese

   that the reinstatement sum was correct.

   c.  On November 23, 2010 at 1:18 PM, Mr. Marchese spoke to Jeff Johnson

   at Bierman, Geesing, Ward, and Wood, LLC who expressed the following

   fear and admission to Mr. Marchese, "They are in the dark on this as this

   is the amount verified by Chase, please don't file a lawsuit, please!"

   d.  On December 27, 2010 at 1:43 PM, Mr. Marchese spoke to Linda at

   Defendant Chase who confirmed to Mr. Marchese the November 23, 2010

   fear of a lawsuit and told Chase to "leave this one alone or he is going to

   file suit against us because of what Chase had done" admission by

   Bierman, Geesing, Ward, and Wood, LLC  to Mr. Marchese.

39. On October 26, 2010 at 10:04AM Mr. Marchese spoke to Chase representative

"Dennis" about the returned reinstatement payment he made by calling 877-218-

7684.  Dennis instructed Mr. Marchese to contact Bierman, Geesing, Ward, and

Wood, LLC on the issue by calling 301-961-6555.  Mr. Marchese immediately

followed Dennis' specific instruction and was told by "Wilson" at Bierman,

Geesing, Ward, and Wood, LLC who promised to contact Chase and email the proper reinstatement figure to Mr. Marchese by the next Friday.

40. As a result of the actions of Chase, Mr. Marchese has been living in fear each day that he will lose their home to foreclosure. Having no where else to turn, since Chase refused to accept his reinstatement payments or any other payments, he is left to bring this action to resolve the situation.

41. Mr. Marchese has experienced severe anxiety, insomnia, stomach pains (knots), and have become depressed as result of the actions of Chase and Chase's agents and each fears daily that he will come home to a notice on the door telling him that his family has to move out of his home. He has also incurred bogus late fees, attorney fees, foreclosure fees, and damage to his credit as further economic damages to the actions alleged herein.

## COUNT I -- VIOLATION OF THE MARYLAND CONSUMER

### DEBT COLLECTION ACT,
### MD CODE, COMM. LAW, § 14-201 *et seq.*
### *(Against All Defendants)*

42. Mr. Marchese reiterates and incorporates every allegation above as if set forth herein in full and add:

43. By threatening and proceeding an intent to foreclose based upon practices described above, Chase has acted as collectors as that term is defined by § 14-201(b) of MD. CODE, COMM. LAW.

44. Mr. Marchese is a person defined by § 14-201(d) of MD. CODE, COMM. LAW.

45. The underlying mortgage transaction and threats of foreclosure as a means towards debt collection related to this complaint constitutes a "consumer transaction" as defined by § 14-201(c) of MD. CODE, COMM. LAW.

46. Chase has claimed, attempted, or threatened to enforce a right with knowledge and bogus documents even though Chase was not entitled to do so under Maryland foreclosure law and procedures.

47. Mr. Marchese's damages as alleged herein were proximately caused by Chase's direct and indirect actions through its authorized agents including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described above.

WHEREFORE, Mr. Marchese prays for the following relief against Chase for its violations of the Maryland Consumer Debt Collection Act:

   A. A money judgment of all damages caused by Chase's actions, directly or indirectly, in the sum of $50,000;

   B. His costs including attorneys' fees as well as pre- and post-judgment interest;

   C. Such other and further relief as the nature of their cause may require.

## COUNT II – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*
### (Against All Defendants)

48. Mr. Marchese reiterates and incorporates every allegation above as if set forth herein in full and add:

49. The mortgage loan transactions and foreclosure practices as set forth herein of the Defendant against the Plaintiffs are governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

50. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The consideration of a loan modification and threat of a foreclosure action involves both the extension of credit and the collection of debts. Section 13-316 requires servicers like Chase to respond to inquiries from consumers within 15 days.

51. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

52. By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act. Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

53. The Defendant's conduct, as set forth above, had the capacity, tendency or effect of deceiving Mr. Marchese who in fact was deceived or misled, causing injury and loss through the unfair or deceptive prosecution, based upon incomplete and bogus responses to his requests for modifications and/or reinstatement of his

loan, or threat of prosecution of a foreclosure action by Defendant directly and indirectly.

54. The facts above demonstrate that Mr. Marchese reasonably relief upon the representations of Chase and Chase's authorized agents and attorneys.

55. Mr. Marchese's damages as alleged herein were proximately caused by Chase's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described above.

WHEREFORE, Mr. Marchese prays for the following relief against Chase for their violations of the Maryland Consumer Protection Act:

A. He be awarded as part of this claim a sum of no less than $50,000 which represents his compensatory damages as a result of the Defendant's direct and indirect, unfair or deceptive practices as described herein including the Defendant's failure to comply with Md. Code Regs. 09.03.06.20, Maryland foreclosure law, and MCDCA;

B. He be awarded their reasonable attorney's fees and costs; and

C. That his claim should include such other and further relief as the Court deems just and proper.

## COUNT III – MARYLAND MORTGAGE FRAUD PROTECTION ACT, Mᴅ. Aɴɴ. Cᴏᴅᴇ, Rᴇᴀʟ Pʀᴏᴘ. § 7-401 Mᴅ. Rᴇᴀʟ Pʀᴏᴘ., *et seq.*

### *(Against All Defendants)*

56. Mr. Marchese reiterates and incorporates every allegation above as if set forth herein in full and add: The Maryland Mortgage Fraud Protection Act, Md.

17

Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendant and Plaintiff.

57. MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs are record owners of the residential property in question and therefore are Homeowners.

58. MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process…includes [t]he…servicing…of a mortgage loan."

59. MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

60. The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like Mr. Marchese from mortgage companies like the Defendant and ensure a level, fair playing field between all borrowers and professionals.

61. Mr. Marchese is a homeowner in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of her residential mortgage loan as it relates to a foreclosure action or threat of foreclosure which is an attempt to collect a certain sum on the mortgage transaction.

62. MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item of (1), (2) or (3) of this section…

63. The Defendants have committed Mortgage Fraud by:

i. Knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including failing to respond to the Plaintiff's requests for a modification or change of their mortgage loans, with the intent that the misstatements, misrepresentations and omission be relied on by the Plaintiff and the general public;

ii. Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, including the state court foreclosure actions it has commenced and carried out, with the

intent that the misstatements, misrepresentations, and omissions be relied on by the Plaintiff.

64. Mr. Marchese has been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as above—including those made by its authorized agents.

WHEREFORE, Mr. Marchese requests the following on their behalf based upon the Defendant's violations of the MMFPA:

A.  He be awarded as part of her claim the sum of no less than $50,000 which represents  his compensatory damages as a result of the Defendant's illegal practices and misrepresentations;

B.  The Plaintiff be awarded three times her actual damages for the Defendant's willful and knowing violations;

C.  He be awarded as part of the claim his reasonable attorney's fees and costs; and

D.  That his claim should include such other and further relief as the Court deems just and proper.

## COUNT IV – DECLARATORY AND INJUNCTIVE RELIEF

### *(Against All Defendants)*

65. Mr. Marchese realleges and incorporates by reference the allegations set forth above and further alleges:

66. The Mr. Marchese entered into contractual agreements known as a deed of

trust that the Defendant now claims to hold an interest to or seeks to enforce by right. This deed of trust were of record and agreed to by Mr. Marchese before the effective day of MD LEGIS 322 (S.B. 562) (2010).

67. The deed of trusts named someone other than an individual as trustee.

68. The deed of trust may not be enforced through a power of sale since a proper trustee was not named in the instrument.

69. The contract was entered into before the Maryland legislature enacted amendments to Real Property Article, § 4-109 and § 7-105 (the "Amendments") in MD LEGIS 322 (S.B. 562) (2010).

70. The Amendments provide for the following changes to existing Maryland law:

**Md. Ann. Code, Real Prop., § 4-109.**
(a) If an instrument was recorded before January 1, 1973, any failure of the instrument to comply with the formal requisites listed in this section has no effect, unless the defect was challenged in a judicial proceeding commenced by July 1, 1973.

(b) If an instrument is recorded on or after January 1, 1973, whether or not the instrument is executed on or after that date, any failure to comply with the formal requisites listed in this section has no effect unless it is challenged in a judicial proceeding commenced within six months after it is recorded.

(c) For the purposes of this section, the failures in the formal requisites of an instrumentare:
(1) A defective acknowledgment;
(2) A failure to attach any clerk' certificate;
(3) An omission of a notary seal or other seal;
(4) A lack of or improper acknowledgment or affidavit of consideration, agency, or
disbursement; ~~or~~
(5) An omission of an attestation; **or**
**(6) A failure to name any trustee in a deed of trust.**

<< MD REAL PROP § 7-105 >>

21

**7-105.**

    (a) **In this section, "individual" means a natural person.**
**(b)(1)** A ~~provision may be inserted in a~~ mortgage or deed of trust ~~authorizing any natural person named in the instrument, including the secured party, to sell~~ **may authorize the sale of** the property or ~~declaring~~ **declare** the borrower's assent to the passing of a decree for the sale of the property, on default in a condition on which the mortgage or deed of trust provides that a sale may be made.
**(2) A power of sale or assent to decree authorized in a mortgage or deed of trust**
**may be exercised only by an individual.**
**(3) The individual selling the property under a power of sale need not be named in the mortgage or deed of trust.**
**(4) An error or omission in a mortgage or deed of trust concerning the designation of the trustee or the individual authorized to exercise a power of sale does not invalidate the instrument or the ability of the mortgagee or beneficiary of the deed of trust to appoint an individual to exercise the power of sale.**
**(5) If a mortgage or deed of trust allows for the appointment or substitution of a trustee or an individual authorized to exercise a power of sale, the holder of the mortgage or deed of trust may make the appointments or substitutions from time to time.**
~~(b)~~**(c)** A sale made pursuant to this section, §§ 7-105.1 through 7-105.8 of this subtitle, or the Maryland Rules, after final ratification by the court and grant of the property to the purchaser on payment of the purchase money, has the same effect as if the sale and grant were made under decree between the proper parties in relation to the mortgage or deed of trust and in the usual course of the court, and operates to pass all the title which the borrower had in the property at the time of the recording of the mortgage or deed of trust.

<< Note: MD REAL PROP §§ 4-109, 7-105 >>

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall be

construed to apply retroactively and shall be applied to and interpreted

to affect any mortgage or deed of trust on record or recorded on or after

June 1, 2010.

SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall take
effect June 1,

2010.

Approved May 4, 2010.

See MD LEGIS 322 (S.B. 562) (2010) (bolded provisions are additions made by SB 562)

71. The amendments purport to apply to all instruments including private deeds of trust entered into prior to the enactment of the law.  The Plaintiff had vested rights in the instrument as written.

72. The attempt to apply the law retroactively to contracts where vested rights have accrued violates the Maryland Constitution, Article III, §§ 33, 40 and Article 24 of the Maryland Declaration of Rights, and the U.S. Constitution, Article I, section 10, clause 1, Takings Clause of the 5th Amendment, and 14th Amendment.

73. Therefore, the deed of trust entered into by the Plaintiff may not be abrogated or changed by retroactive or special legislation.

74. In the absence of an individual trustee, there is no authority to enforce any power of sale clause in the deeds of trust.

75. There is an actual controversy between the parties. This court may enter a declaratory judgment pursuant to MD ANN. CODE., CTS. & JUD. PROC., § 3-403.

76. The Plaintiff is entitled to a declaration that the deed of trust between him and the Defendant may not be enforced through a power of sale.

WHEREFORE, Mr. Marchese requests that the Court grant the following declaratory relief in his favor and against Defendant Chase:

23

a. The court declare that any power of sale in the Deeds of Trust may not be enforced by a trustee other than an individual and therefore the Deed of Trust between Chase and Mr. Marchese which does not name an individual as Trustee may not be enforced through a power of sale;  and

b. Attorney's fees, litigation expenses and costs as may be allowed by law; and

c. Such other and further relief that is appropriate.

Respectfully Submitted,

Phillip R. Robinson
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016
Attorney for Plaintiff

## REQUEST FOR A JURY TRIAL

Plaintiff requests a jury trial on all claims asserted herein.

Phillip Robinson