IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEAN C. MARCHESE,                          :

     Plaintiff,                          :

v.                                         :        Civil Action No. GLR-12-1480

JPMORGAN CHASE BANK, N.A.,                 :

     Defendant.                          :

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on three pending motions, including Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff Dean C. Marchese's four-count Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 11); Mr. Marchese's Motion to Remand (ECF No. 13); and Chase's Motion for Leave to File Surreply to Motion to Remand (ECF No. 24).

This is a home mortgage lending case in which Mr. Marchese alleges that Chase violated Maryland state consumer protection laws by committing mortgage fraud during the foreclosure, modification, and reinstatement of his home mortgage loan.  Mr. Marchese also contends that the curative Maryland statute, that retroactively corrects the otherwise void power of sale clause in his deed of trust ("DOT"), is unconstitutional.

All told, the Complaint implicates the following four provisions of Maryland state law: (1) Maryland Consumer Debt

Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 <u>et seq.</u> (West 2012); (2) Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 <u>et seq.</u> (West 2012); (3) Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401 <u>et seq.</u> (West 2012); and (4) Md. Code Ann., Real Prop. § 4-109 (West 2012).

The six issues before the Court are (1) whether the amount in controversy is sufficient to establish federal diversity jurisdiction over this action; (2) whether Chase's surreply is necessary to the Court's decision regarding Mr. Marchese's Motion to Remand; (3) whether Mr. Marchese set forth a plausible claim that Chase acted improperly as a debt collector in the foreclosure action under the MCDCA; (4) whether Mr. Marchese set forth a plausible claim that Chase (a) engaged in unfair or deceptive practices in the extension of credit or the collection of consumer debts under the MCPA, and (b) sufficiently pled damages related to this claim; (5) whether loan servicing, particularly loan collection, is regulated by the MMFPA, and whether Mr. Marchese sufficiently pled damages related to this claim; and (6) whether Mr. Marchese has standing to seek declaratory and injunctive relief regarding the constitutionality of amendments to Md. Code Ann., Real Prop. § 4-109 (West 2012); The issues have been fully briefed and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2011). For

the reasons that follow, Chase's Motion to Dismiss will be granted as to Count I, granted as to the foreclosure action referenced in Counts II and III, but denied with respect to the loan modification and reinstatement referenced in Counts II and III. Additionally, Chase's request for declaratory judgment will be denied, but Count IV will be dismissed *sua sponte* for lack of standing. Finally, Mr. Marchese's Motion to Remand will be denied, and Chase's Motion for Leave to File a Surreply will be denied.

## I.    BACKGROUND[1]

On July 23, 1999, Mr. Marchese purchased real property at 10017 Prestwich Terrace in Ijamsville, Maryland (the "Property") for $359,091. (See Def.'s Mem. Supp. Mot. to Dismiss ["Def.'s Mot."] at 2, ECF No. 11). Mr. Marchese subsequently refinanced the Property on six occasions, which resulted in two deeds of trust in the aggregate principal amount of $729,100.

In March 2006, Mr. Marchese refinanced his existing home mortgage with a new lender, Steward Financial, Inc. Steward Financial's trustee named on the contract was a corporate entity, not a natural person. The mortgage loan on the Property is serviced by Chase. This most recent loan reflects the first

---

[1] Unless otherwise noted, the following facts are taken from the Complaint. The well-pled allegations in the Complaint are accepted as true and viewed in the light most favorable to Mr. Marchese. See Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011).

and only relevant DOT for purposes of these motions, totaling $634,000.[2]   After Mr. Marchese fell behind on his mortgage payments, Chase, by and through the law firm of Bierman, Geesing, Ward, and Wood, LLC ("Substitute Trustees"), initiated foreclosure on the Property on June 5, 2009 (the "Foreclosure Action").[3]   (Def.'s Mot. at 3).   Consequently, Mr. Marchese sought a modification of his mortgage under the Home Affordable Modification Program ("HAMP").[4]   (See Def.'s Mot. Ex. E, at 2).

On July 11, 2009, Chase and Mr. Marchese entered into a trial period loan modification plan ("Trial Period Plan").   The Trial Period Plan indicated that Mr. Marchese was expected to make reduced mortgage payments from July 1, 2009, through September 1, 2009.   (Def.'s Mot. Ex. E, at 2).   If he complied

---

[2] The second lien deed of trust totals $95,100 and is not referenced in the Complaint.   (See Def.'s Mot. at 2).

[3] The docket indicates that the Substitute Trustees did not prosecute the Foreclosure Action, which was dismissed without prejudice on March 10, 2010.   (See Geesing v. Marchese, No. 10C09002064, Dkt. No. 5 (Cir. Ct. Frederick Cnty., Mar. 10, 2010)).

[4] The HAMP loan modification process occurs in two steps. Allen v. CitiMortgage, Inc., No. CCB-10-2740, 2011 WL 3425665, at *1 (D.Md. Aug. 4, 2011).   First, the mortgage servicer (Chase) determines whether the borrower is eligible to participate in HAMP.   Id.   If a mortgage servicer determines that the borrower is eligible for HAMP, the servicer may offer the borrower a three-month Trial Period Plan, during which borrower pays reduced mortgage payments.   Id.   If all of the conditions of the Trial Period Plan Agreement are satisfied, the borrower may then proceed to step two of the process, at which point he or she is offered a permanent loan modification.   Id.

with the terms of the Trial Period Plan and his representations made therein remained true in all material aspects, Chase would provide him with a Home Affordable Modification Agreement ("Modification Agreement") for his signature. (Id.)

Mr. Marchese made all three trial payments required by the Trial Period Plan from July 13, 2009, through September 1, 2009;[5] however, for unknown reasons, Chase did not provided him with a Modification Agreement for his signature, and he continued making modified payments, accepted by Chase, under the terms of the Trial Period Plan through April 1, 2010.  On March 10, 2010, the Foreclosure Action was dismissed without prejudice. (Def.'s Mot. Ex. D, at 2, 4).  On April 29, 2010, Chase informed Mr. Marchese that he needed more income to qualify for a permanent loan modification.  Accordingly, on May 5, 2010, Chase notified Mr. Marchese that it would no longer honor his Trial Period Plan and that he would need to reapply for a loan modification.

On May 12, 2010, Mr. Marchese reapplied for a loan modification and provided the requested information.  He alleges

---

[5] The terms of the Trial Period Plan required Mr. Marchese to make his first payment on or before July 1, 2009.  (See Def.'s Mot. Ex. E, at 3).  To be sure, the Trial Period Plan stated that failure to make timely payments would result in the loan not being modified.  (Id.)  By his own admission, Mr. Marchese did not make the first payment until July 13, 2009. (Compl. ¶ 29).  Chase does not, however, appear to take issue with the timeliness of Mr. Marchese's payments, but instead provides an alternative justification for refusing to permanently modify Mr. Marchese's loan.  (See Compl. ¶ 30).

that the Substitute Trustees ignored his application and, instead, "proceeded to institute bogus foreclosure proceedings." (Compl. ¶ 32).  The state docket does not, however, reflect the initiation of any formal foreclosure actions against Mr. Marchese after March 10, 2010.

Thereafter, on October 1, 2010, Mr. Marchese made two good faith payments in the amounts of $3,608.39 and $4,078.75, but Chase refused to accept those payments.[6]  In October 2010, Mr. Marchese requested a reinstatement amount from the Substitute Trustees, and they provided him with a written reinstatement quote on October 27, 2010.  The reinstatement quote provided that the loan could be reinstated until November 11, 2010, for a payment of $65,466.64.

On November 9, 2010, pursuant to the reinstatement quote, Mr. Marchese sent a cashier's check of certified funds in the amount of $65,466.64, via USPS certified mail, payable to JPMorgan Chase Bank, N.A.  The Substitute Trustees accepted the funds.  Nevertheless, on November 22, 2010, Chase returned the certified funds to Mr. Marchese, indicating that the funds were insufficient to cure the default.  Mr. Marchese subsequently contacted Chase who confirmed that the reinstatement sum was

---

[6] Chase contends that pursuant to the DOT, it had the right to return any payment or partial payment if the payment or partial payments were insufficient to bring the loan current. (See Def.'s Mot. at 4 n.2).

correct.   Additionally, during a phone conversation on November 23, 2010, the Substitute Trustees told Mr. Marchese that Chase verified the reinstatement quote.

Later, at an undetermined date, Mr. Marchese contacted the Substitute Trustees who promised to contact Chase and email the correct reinstatement figure to Mr. Marchese within one week.[7] Mr. Marchese alleges that, as a result of Chase's actions, he has "been living in fear each day that he will lose [his] home to foreclosure."  (Compl. ¶ 40).  Mr. Marchese contends that he has "experienced severe anxiety, insomnia, stomach pains, and [has] become depressed . . . ."  (Compl. ¶ 41).  Mr. Marchese also avers that he has "incurred bogus late fees, attorney fees, foreclosure fees, and damage to his credit as further economic damages . . . ."  (Id.)

On March 20, 2012, Mr. Marchese filed a four-count Complaint in the Circuit Court of Maryland for Baltimore City, seeking damages for Chase's alleged failure to comply with Maryland law in the handling of his home mortgage loan.  After the Complaint was filed, Chase removed the case to this Court on May 16, 2012.  (ECF No. 1).  On June 1, 2012, Chase moved the

---

[7] The Complaint avers that Mr. Marchese spoke with Chase on October 26, 2010, about a returned reinstatement payment.  This date seems incorrect, however, because the Complaint also alleges that the reinstatement payment was not sent to Chase until November 9, 2010.  (See Compl. ¶ 39).  The correct date is likely November 26, 2010.

Court to dismiss Counts I–III of the Complaint, and sought a declaratory judgment regarding Count IV, stating that the power of sale in the DOT remains in full force and effect. (ECF No. 11). On June 13, 2012, Mr. Marchese moved this Court to remand the case back to state court (ECF No. 13), and Chase moved for leave to file a surreply as part of its opposition to Mr. Marchese's Motion to Remand. (ECF No. 24).

## II.  DISCUSSION PART I

### A.  <u>Standard of Review for a Motion to Remand</u>

Federal courts have removal jurisdiction over state court actions "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (2012). A district court has original jurisdiction over civil claims arising under federal law, 28 U.S.C. § 1331 (2012); over civil actions where the amount in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity of citizenship, 28 U.S.C. § 1332(a) (2012); and over actions where the "putative state law claim has been totally subsumed by federal law," <u>Barbour v. Int'l Union</u>, 594 F.3d 315, 326 (4th Cir. 2010), <u>abrogated on other grounds by</u> 28 U.S.C. § 1446(b)(2)(B) (2012). The removing party has the burden of proving the existence of federal jurisdiction. <u>Id.</u>; <u>Strawn v. AT & T Mobility LLC</u>, 530 F.3d 293, 296 (4th Cir. 2008).

When the plaintiff challenges the propriety of removal, the

defendant bears the burden of proving that removal was proper. See Greer v. Crown Title Corp., 216 F.Supp.2d 519, 521 (D.Md. 2002) (citing Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)).  On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." Richardson v. Phillip Morris, Inc., 950 F.Supp. 700, 702 (D.Md. 1997) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court."  Id. at 701.

Nevertheless, the federal remand statute provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." 28 U.S.C. § 1447(d) (2012).  In other words, "a district court should be cautious in denying defendants access to a federal forum because remand orders are generally unreviewable." Semtek Int'l, Inc. v. Lockheed Martin Corp., 988 F.Supp. 913, 914–15 (D.Md. 1997); see also In re Lowe, 102 F.3d 731, 736 (4th Cir. 1996) ("[A] federal court loses jurisdiction over a case as soon as its order to remand the case is entered.").  If an order to remand is entered, all remaining pending motions are moot.  In re Lowe, 102 F.3d at 736.

B. **Analysis**

The Motion to Remand is denied because both parties agree that complete diversity of citizenship exists, and the Court finds that the amount in controversy exceeds $75,000 based squarely on Mr. Marchese's Complaint, which includes trebled damages on a claim for $50,000 in actual damages and declaratory relief concerning a deed of trust valued at $634,000.

1. **Amount in Controversy – Trebled Damages**

The Court denies Mr. Marchese's Motion to Remand because Marchese's request for trebled damages on a $50,000 claim, pursuant to MMFPA, proves to a sufficient legal certainty that the amount in controversy exceeds $75,000.

When a plaintiff claims damages less than $75,000, removal is proper if the "defendant can prove to a 'legal certainty' that the plaintiff would . . . recover more than that if she prevailed." Lee v. Citimortgage, Inc., 739 F.Supp.2d 940, 945 (E.D.Va. 2010) (quoting LJT & Assocs., Inc. v. Koochagian, No. WDQ-09-2405, 2009 WL 4884525, at *3 (D.Md. Dec. 10, 2009)). Because Mr. Marchese claimed damages less than $75,000, Chase must prove to a sufficient legal certainty that Mr. Marchese would receive more if he prevailed. See Momin v. Maggiemoo's Int'l, L.L.C., 205 F.Supp.2d 506, 509 n.2 (D.Md. 2002).

Notably, Mr. Marchese also claims he is entitled to statutory trebled damages under the MMFPA in Count III. Trebled

10

damages are considered when determining the amount in controversy.  See, e.g., Wall v. Fruehauf Trailer Servs., Inc., 123 F.App'x 572, 577 (4th Cir. 2005) (affirming trial court's decision that trebling damages would increase amount in controversy to in excess of $75,000, and thus the amount in controversy requirement was met); R.L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc., 23 F.App'x 141, 145 n.3 (4th Cir. 2001) ("When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages").  Chase correctly points out that, as "the master of the claim," Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987), Mr. Marchese could have capped the request for trebled damages under $75,000; however, he chose not to do so.  Thus, the demand for full compensation clearly requests at least $50,000 trebled, which amounts to at least $150,000. Although the award of trebled damages under the MMFPA is discretionary, Mr. Marchese unequivocally pled that he is entitled to the statutory award.

Mr. Marchese attempts to categorize his claim for compensatory damages as unspecified because he did not enumerate actual damages.  This argument is without merit, because actual damages and compensatory damages are sufficiently comparable terms that convey the same meaning.  Hofmann v. O'Brien, 367 F.App'x 439, 445 (4th Cir. 2010).  Mr. Marchese also alleges

that the qualifier "at least" indicates that he expects he could receive less than $50,000, and thus the trebled total could be less than $75,000, and the legal certainty standard would not be met. Even if the Court found merit to this argument,

> [i]n removal practice, when a complaint does not allege a specific amount of damages . . . [t]he district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy. Importantly, the jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached.

St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253-54 (5th Cir. 1998) (internal citation omitted). At the time of the Complaint, Mr. Marchese believed he was entitled to a minimum of $50,000 in damages under the MMFPA and pled accordingly. Thus, it is facially apparent to the Court that such trebled damages exceed the $75,000 jurisdictional threshold amount.

Consequently, the Court concludes that the Complaint alleges facts and claims wherein the amount in controversy exceeds $75,000. Chase has carried its burden to show that the threshold amount for diversity jurisdiction is present in this case, and Mr. Marchese's Motion to Remand is, therefore, denied.

**2.    Amount in Controversy – Deed of Trust**

On additional and independent grounds, the Court denies Mr. Marchese's Motion to Remand because his request for a declaration that the power of sale clause in the DOT is of no effect places the value of the mortgage loan in controversy and thus, meets the jurisdictional threshold.

When the complaint does not seek monetary damages, as in Count IV of the case at bar, "the amount in controversy is measured by the value of the object of the litigation" to either party. JTH Tax, Inc. v. Frashier, 624 F.3d 635, 639 (4th Cir. 2010) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)).   This has become known as the "either viewpoint" rule.   In re Microsoft Corp. Antitrust Litig., 127 F.Supp.2d 702, 718 (D.Md. 2001).   Under the "either viewpoint" approach, "courts are required to look to the underlying rights and obligations of the litigants to calculate the potential pecuniary impact of [a] judgment to either party." Wood v. Gen. Dynamics Advanced Info. Sys., Inc., No. 1:08cv624, 2009 WL 1687967, at *4 (M.D.N.C. June 17, 2009); accord Hudson Const. Co. v. Dillingham Const. Co., 169 F.App'x 769, 770–71 (4th Cir. 2006).

In this case, the power of sale provision is the enforcement mechanism of the DOT, securing the loan value of $634,000.   Thus, the pecuniary impact to Chase losing the power

to enforce the DOT through foreclosure sale is potentially $634,000. Mr. Marchese appears to argue in his Reply that, because the Court likely does not have jurisdiction based on the recent decision in Chalk v. PNC Bank, N.A., No. CCB-11-3052, 2012 WL 2915289, (D.Md. July 16, 2012),[8] Count IV of the Complaint no longer affects the amount in controversy. It is well settled, however, that while a court may determine at any time that subject matter jurisdiction is lacking, such jurisdiction is assessed as of the time suit was filed. Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248, 255-26 (4th Cir. 2002) (citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991)). The conditions creating diversity jurisdiction, including the amount in controversy, need not survive through the life of the litigation. Id. For reasons discussed *infra*, it is now clear that Mr. Marchese lacks standing to bring Count IV. At the time of the Complaint, however, Mr. Marchese pled believing that he did have standing, and the value of the DOT remains a factor in determining the amount in controversy. See Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1204 (4th Cir. 1979) (holding that "[o]nce jurisdiction exists, subsequent events, such as the determination that one of the aggregated claims was without merit, do not destroy" jurisdiction); see also, JTH Tax, Inc.,

---

[8]     See infra Discussion Part II(B)(4).

624 F.3d at 638 ("In other words, jurisdiction turns not on the sum contained in [plaintiff's] summary judgment motion, but on the good faith of the allegation in its complaint of an adequate jurisdictional amount.").

Because the amount in controversy exceeds the jurisdictional threshold through at least two different paths, this Court will retain jurisdiction over this action. Mr. Marchese's Motion to Remand is, therefore, denied.

### 3.   Motion for Leave to File Surreply

The Court denies Chase's Motion for Leave to File Surreply because Chase was afforded sufficient opportunity to contest the matters raised in Mr. Marchese's initial Motion.

Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed.  See Local Rule 105.2(a) (D.Md. 2011).  "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citations omitted), aff'd, 85 F.App'x 960 (4th Cir. 2004).

In the Reply to Defendant's Opposition to Plaintiff's Motion to Remand (ECF No. 22), Mr. Marchese argues that this Court should remand Count IV of the Complaint in light of the recent decision in Chalk.  (See Reply to Def.'s Opp'n. to Pl.'s Mot. to Remand ["Reply to Mot. to Remand"] at 8).  Mr. Marchese

15

specifically stated that he does not object to the filing of a surreply to address whether this Court has jurisdiction to hear Count IV in light of the Chalk decision. (Id. at 9 n.3). There is no need for Chase to reply to the recent disposition in Chalk, however, because both parties referenced Chalk in multiple memoranda, and Mr. Marchese specifically brought Chalk to the Court's attention as a parallel pending civil action. (See Notice of Related Cases at 1, ECF No. 8). Thus, when Mr. Marchese discussed the most recent holding in Chalk, he was not raising a new issue or legal theory. Instead, Mr. Marchese was calling attention to the most recent disposition of a pending case in an effort to support the previously stated contention that this Court lacked jurisdiction to hear Count IV. Chase's proposed surreply seeks to challenge Mr. Marchese's explanations of cited case law and mostly rebut previously argued points.

Because the Court can make its own determination regarding the implications of the Chalk disposition, there is no need for Chase to contest what amounted to Mr. Marchese's concession of lack of standing to bring the Count IV claim. See Interphase Garment Solutions, LLC v. Fox Television Stations, Inc., 566 F.Supp.2d 460, 466 (D.Md. 2008) (denying motion for leave to file surreply where proposed surreply merely rebutted previously briefed matters). Consequently, the Court hereby denies Chase's Motion for Leave to File Surreply. The Court now turns its

attention to Chase's Motion to Dismiss.

### III. DISCUSSION PART II

**A.   Standard of Review for a Motion to Dismiss**

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint.  See Edwards, 178 F.3d at 243.   The United States Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint."   Twombly, 550 U.S. at 561 (internal citations omitted); see Fed.R.Civ.P. 12(b)(6).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.  A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement."   Iqbal, 556 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face."  Id.; Twombly, 550 U.S. at 570; see also Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed

if it does not allege enough facts to state a claim to relief that is plausible on its face."). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

**B.   Analysis**

**1.   MCDCA Claims (Count I)**

The Court grants Chase's Motion to Dismiss Count I because Mr. Marchese concedes that he was in default of the mortgage agreement and that Chase had a right to collect the debt.

The MCDCA provides that a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8) (West 2012). Additionally, the "knowledge" requirement of the

MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." Kouabo v. Chevy Chase Bank, F.S.B., 336 F.Supp.2d 471, 475 (D.Md. 2004) (citing Spencer v. Henderson-Webb, Inc., 81 F.Supp.2d 582, 595 (D.Md. 1999)).

In its Motion, Chase concedes that the mortgage loan is a "consumer transaction" under the MCDCA § 14-201(c), but argues that the Substitute Trustees, and not Chase, were the collectors of the debt. (Def.'s Mot. at 7-8). Although Chase assigned the Substitute Trustees to handle the Foreclosure Action on its behalf, Chase can still be considered the collector of the loan.

As this Court noted in Cohn v. Charles, 857 F.Supp.2d 544 (D.Md. 2012), trustees who are plaintiffs in a foreclosure action represent the interests of the mortgagee, and thus the two are "effectively one and the same." Id. at 549; see also Md. Rule 14-204 and 14-214 (West 2012) (allowing for a substitute trustee to institute an action to foreclose a lien and conduct the sale of property).

Additionally, the United States Court of Appeals for the Fourth Circuit held that privity exists, and the relevant interests are the same, between a substitute trustee and a loan servicer, because that substitute trustee prosecutes the state court foreclosure action on behalf of the loan servicer. Jones

v. HSBC Bank USA, N.A., 444 F.App'x 640, 644 (4th Cir. 2011).

Here, the Substitute Trustees represented Chase's interests and filed the Foreclosure Action on Chase's behalf.  The two are, therefore, effectively one and the same, and this Court considers Chase the collector of the debt.  Nevertheless, the Court finds Mr. Marchese's allegations—that Chase violated the MCDCA by claiming, attempting, or threatening to enforce a right with knowledge that the right did not exist—to be without merit.

As correctly noted by Chase, the DOT, by its terms, permits Chase to foreclose upon the defaulted mortgage, and Mr. Marchese does not aver that he was not in default on the loan.  (Def.'s Mot. Ex. B, ¶ 22; see also Def.'s Mot. Ex. C ¶¶ 7(B)-(C)).  In fact, Mr. Marchese concedes that he was in default on his mortgage payments.  (See Compl. ¶ 27).  Thus, Chase had the right to foreclose on the Property.

Although Mr. Marchese takes issue with the methods used by the Substitute Trustees on Chase's behalf, including alleged missing signatures and improper notarizations, the MCDCA only allows for recovery against creditors that attempt to collect debts when there is no right to do so.  It does not, as Mr. Marchese contends, allow for recovery based on errors or disputes in the process or procedure of collecting legitimate, undisputed debts.  See Stewart v. Bierman, 859 F.Supp.2d 754, 770 (D.Md. 2012) (finding that plaintiff's MCDCA claim failed

where plaintiff took issue with the method used by defendants to attach signatures to foreclosure documents).

Mr. Marchese's attempt to differentiate the instant case from _Stewart_ is unpersuasive. As this Court decided in _Stovall v. SunTrust Mortg., Inc._, No. RDB-10-2836, 2011 WL 4402680 (D.Md. Sept. 20, 2011), the alleged filing of improper foreclosure documents does not change the fact that the right to foreclose arises when the property owner defaults on the mortgage. _Id._ at *9. Thus, Chase's right to foreclose came about when Mr. Marchese defaulted on his mortgage prior to the Foreclosure Action in June 2009. While Chase may have employed shortcuts in the initiation and docketing of foreclosure proceedings against Mr. Marchese, the documents did not contain false information regarding the underlying debt.

Mr. Marchese has, therefore, failed to state a claim upon which relief can be granted, and the Court grants Chase's Motion to Dismiss Count I of the Complaint.

### 2.  MCPA Claims (Count II)

The Court grants Chase's Motion to Dismiss Count II with respect to the Foreclosure Action, but denies Chase's Motion to Dismiss with respect to the mortgage loan modification and loan reinstatement.

Under Maryland law, it is unlawful for a person to use unfair or deceptive trade practices by means of false or

misleading statements in the extension of credit or the collection of consumer debts. Md. Code Ann., Com. Law §§ 13-301(1), 13-303(4)-(5) (West 2012). "The Consumer Protection Act . . . was intended to provide minimum standards for the protection of consumers in the State." Lloyd v. Gen. Motors Corp., 916 A.2d 257, 276 (Md. 2007) (citation omitted). The MCPA is intended to be liberally construed in order to achieve its consumer protection objectives. See State v. Cottman Transmissions Sys., Inc., 587 A.2d 1190, 1204 (Md.Ct.Spec.App. 1991). To assert a claim for false or misleading statements under the MCPA, Mr. Marchese must allege not only that Chase made a false or misleading statement in the extension of credit or the collection of consumer debts, but also that the statement caused him an actual loss or injury. See Citaramanis v. Hallowell, 613 A.2d 964, 971 (Md. 1992) (holding that the MCPA explicitly requires proof of actual damages).

Additionally, because the MCPA claim sounds in fraud, it is subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). See Haley v. Corcoran, 659 F.Supp.2d 714, 724 n.10 (D.Md. 2009); Johnson v. Wheeler, 492 F.Supp.2d 492, 509 (D.Md. 2007). Fourth Circuit courts have established that:

> To state a fraud claim under Maryland law, a plaintiff
> must allege five elements with particularity: (1) the
> defendant made a false statement of fact; (2) the

> defendant knew the statement was false or acted with
> reckless disregard for the truth of the statement; (3)
> the defendant made the statement for the purpose of
> defrauding the plaintiff; (4) the plaintiff reasonably
> relied on the false statement, and (5) the plaintiff
> was damaged as a result.

Thompson v. Countrywide Home Loans Servicing, L.P., No. L-09-2549, 2010 WL 1741398, at *3 (D.Md. Apr. 27, 2010) (citing Martens Chevrolet, Inc. v. Seney, 439 A.2d 534 (Md. 1982)).  For the MCPA claims, Mr. Marchese is, therefore, required to allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison, 176 F.3d at 784.  A failure to comply with this rule is treated as a failure to state a claim under Rule 12(b)(6).  See id. at 783 n.5; see also Stovall, 2011 WL 4402680, at *8.

As a threshold matter, the Court notes that there are three transactions that could possibly bring Chase within the ambit of the MCPA: (1) the Foreclosure Action; (2) the mortgage loan modification; and (3) the loan reinstatement.  The Court will address each transaction in turn.

### a.    The Foreclosure Action

With respect to the Foreclosure Action, a perfunctory review of the Complaint reveals that Mr. Marchese makes broad allegations that he suffered injury or loss through the unfair or deceptive prosecution, but the Foreclosure Action was

dismissed.   Because Mr. Marchese made no allegations of false statements related to the Foreclosure Action beyond missing or incorrect signatures, and the action was dismissed with no new pending foreclosure proceeding filed in state court, the Court finds that Mr. Marchese failed to state a claim under the MCPA regarding the Foreclosure Action.   Accordingly, the only remaining possible causes of action under the MCPA arise from Mr. Marchese's loan modification and reinstatement.

### b.   The Loan Modification and Reinstatement

In moving to dismiss Count II, Chase posits two principal arguments: (1) the MCPA does not apply because there was no extension of credit; and (2) Mr. Marchese failed to plead a specific injury or loss with particularity that resulted from Chase's actions.

### i.   "Extension of Credit" Provision

While the MCPA does not expressly define "extension of credit," the term is defined under the Maryland Credit Services Businesses Act ("MCSBA") as "the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes."   Md. Code Ann., Com. Law § 14-1901(f) (West 2012); see also id. § 14-1914(a) (West 2012) (any violation of the MCSBA "is an unfair or deceptive trade practice under [the MCPA]").

The oral and written misrepresentations allegedly made by Chase regarding the loan modification and the reinstatement relate to an extension of credit under this definition. <u>See Barry v. EMC Mortg. Corp.</u>, No. DKC 10-3120, 2012 WL 3595153, at *7 (D.Md. Aug. 17, 2012) (holding that oral misrepresentations related to a mortgage trial period modification relate to an extension of credit under the MCSBA definition).

Chase cites no case law suggesting that the "extension of credit" referred to by the MCPA is limited to the original loan, and at least one court has found that the MCPA may apply in a similar context to the one presented in this case. <u>See</u> <u>Allen</u>, 2011 WL 3425665, at *9-10 (denying a motion to dismiss MCPA claims related to alleged misrepresentations regarding modification of an existing loan). In <u>Allen</u>, this Court denied a motion to dismiss an MCPA claim, holding that the plaintiff in that case pled with "sufficient particularity a claim that CitiMortgage sent false or misleading statements to the [plaintiffs]." <u>Id.</u> at *9.

Even assuming arguendo the Court was to find that none of the transactions herein constitute an "extension of credit," the MCPA would still apply, because Chase appears to concede that the averments in the Complaint sufficiently qualify as "collection of consumer debts," as Chase does not address this issue in its Motion to Dismiss. This tacit admission would

25

certainly be sufficient to bring Chase within ambit of the MCPA. Chase merely posits conclusory arguments that, since it was not a debt collector under the MCDCA, the debt collector provision of the MCPA does not apply. (See Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss [Def.'s Reply] at 6-7, ECF No. 23). Having previously found that Chase is a collector of debt in this case, the Court holds that the MCPA applies because Chase's actions related to the loan modification and reinstatement qualify as a collection of consumer debts.

### ii. Heightened Pleading Standard Regarding False and/or Misleading Statements

The plaintiffs in Allen identified at least six contradictory written communications that had the "capacity, tendency, or effect of deceiving or misleading them about their status under the Trial Period Plan program and whether their mortgage was in default." Allen, 2011 WL 3425665, at *9. Similarly, Mr. Marchese has pled the dates and contents of myriad oral or written statements about his loan modification and reinstatement that had the capacity, tendency, or effect of deceiving or misleading him about the status of his modification and his ability to cure the default through a timely reinstatement payment.

According to the Complaint, Chase made its first misleading statement on April 29, 2010, stating that Mr. Marchese needed

more income to qualify for the Trial Period Plan, despite the fact that there was no such requirement[9] and he had a gross monthly income of $10,000. (See Compl. ¶ 30). On October 27, 2010, Mr. Marchese received another written statement from the Substitute Trustees, informing him that he could reinstate the loan for $65,466.64 if payment was received by November 11, 2010. (Compl. ¶ 36). After remitting the funds as requested, however, Chase returned the funds to Mr. Marchese on November 22, 2010, stating "[f]unds insufficient to cure default." (Compl. ¶ 38). Yet, in a phone conversation on November 23, 2010, a Chase representative admitted to Mr. Marchese that the reinstatement sum was correct. (Compl. ¶ 38b). Indeed, a representative for the Substitute Trustees conceded that the reinstatement amount was verified by Chase. (Compl. ¶ 38c).

---

[9] Prior to June 1, 2010, a mortgage servicer could determine a borrower's eligibility either by relying on unverified financial information provided orally by the borrower or by requiring the borrower to submit documentation to prove income status. Allen, 2011 WL 3425665, at *1 (citing HAMP Supplemental Directive 09-901 at 6, 17). Because mortgage servicers were not required to verify a borrower's financial information prior to offering a Trial Period Plan, a number of borrowers who were initially offered Trial Period Plans were later found to be ineligible for permanent loan modifications under HAMP. Id. To remedy this issue, the Treasury Department issued a Supplemental Directive, effective June 1, 2010, requiring mortgage servicers to fully verify a borrower's financial information before offering a Trial Period Plan. See U.S. Dep't of Treasury, HAMP Supplemental Directive 10-01, available at https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd1 001.pdf (last visited Dec. 27, 2012). Mr. Marchese began the Trial Period Plan under the original scheme.

Nevertheless, in a phone conversation on November 26, 2010, Chase admonished Mr. Marchese to contact the Substitute Trustees regarding the returned payment, who, in turn, promised to contact Chase and email the correct reinstatement figure to Mr. Marchese.  (Compl. ¶ 39).  These statements, when taken in combination, allege with sufficient particularity a claim that Chase made false or misleading statements to Mr. Marchese that had the capacity, tendency, or effect of deceiving or misleading him about his eligibility for the Trial Period Plan program and his ability to cure the default through a timely reinstatement payment.  See Md. Code Ann., Com. Law § 13-301(1) (West 2012).

Additionally, Chase points out in its Reply, but not its initial Motion, that Mr. Marchese does not allege he made any written requests that would have required Chase to respond in writing, within fifteen days, under § 13-316 of the MCPA.  Mr. Marchese, however, alleges that he mailed a loan modification application to Chase and that he never received a response. (Compl. ¶¶ 31-32, 50).  The loan modification application could qualify as an "inquiry" under § 13-316, and thus, accepting the facts in the Complaint as true, it is inappropriate to dismiss this claim at the pleading stage.

### iii. Heightened Pleading Standard Regarding Actual Injury

Finally, Chase urges that dismissal of the Complaint is appropriate, because Mr. Marchese has not pled any specific injury or loss.  As Chase noted in its Motion to Dismiss, a person who files a complaint with the Attorney General need not allege that an actual injury occurred; however, a person bringing a private cause of action pursuant to the MCPA must allege that an "actual injury or loss occurred."  (Def.'s Mot. at 10); see also Willis v. Countrywide Home Loans Servicing, L.P., No. CCB-09-1455, 2009 WL 5206475, at *6 (D.Md. Dec. 23, 2009) (quoting Lloyd, 916 A.2d at 277).  Requiring actual injury in private suits strikes an important balance between two competing legislative objectives: preventing unfair or deceptive practices while precluding aggressive, "self-constituted private attorneys general" from bringing suit "over relatively minor statutory violations." Citaramanis, 613 A.2d at 968 (quoting H. Alperin & R. Chase, Consumer Law: Sales Practices and Credit Regulation § 136, at 193 (1986) (footnotes omitted)).  As discussed above, the MCPA claim sounds in fraud, and is therefore subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  See Haley, 659 F.Supp.2d at 724 n.10; Johnson, 492 F.Supp.2d at 509.

In Willis, this Court dismissed a MCPA claim because the

plaintiff failed to allege "that Countrywide's misinformation regarding loan modification programs caused [the plaintiff] to suffer any specific harm, apart from the debt that he already owed." 2009 WL 5206475, at *6. In contrast, this Court held in Barry that the plaintiff sufficiently pled damages under the MCPA when he averred penalties, lost credit opportunities, and emotional distress as a result of the defendant's MCPA violations. 2012 WL 3595153, at *8; see also Allen, 2011 WL 3425665 at *10 (finding the plaintiff's allegations of "damage to [her] credit score [and] emotional damages" sufficient to allege "an actual injury or loss as a result of a prohibited practice under the MCPA").

The instant case is similar to Barry and Allen in that Mr. Marchese pled that he suffered emotional and physical distress, including severe anxiety, depression, insomnia, and stomach pains, in addition to bogus late fees, attorney fees, and damage to his credit. (Compl. ¶¶ 41, 55). Chase points to no case law supporting the proposition that this evidence does not constitute an actual injury or loss under the MCPA, nor does it present any evidence in rebuttal. See Barry, 2012 WL 3595153, at *8. Thus, Mr. Marchese sufficiently pled actual injury or loss to state a claim for which relief can be granted under the MCPA.

Consequently, the Court grants Chase's Motion to Dismiss

Count II with respect to the Foreclosure Action, but denies the Motion to Dismiss with respect to the loan modification and reinstatement.

### 3.   MMFPA Claims (Count III)

The Court grants Chase's Motion to Dismiss Count III with respect to the Foreclosure Action, but denies Chase's Motion to Dismiss with respect to the mortgage loan modification and loan reinstatement.

In Count III, Mr. Marchese alleges that Chase engaged in mortgage fraud in violation of the MMFPA.   In its broadest sense, the statute simply states that "[a] person may not commit mortgage fraud."   Md. Code Ann., Real Prop. § 7-4021 (West 2012).   Relevant to the present action, the statute defines mortgage fraud as:

> (1)   Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

> (2)   Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

> (3)   Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with

> the   intent   that   the   misstatement,
> misrepresentation, or omission be relied on by a
> mortgage lender, borrower, or any other party to
> the mortgage lending process; . . . or
>
> (6)   Filing or causing to be filed in the land records
>       in the county where a residential real property
>       is located, any document relating to a mortgage
>       loan that the person knows to contain a
>       deliberate misstatement, misrepresentation, or
>       omission.

Id. §§ 7-401(d)(1)-(3), (6) (West 2012).

The statutory definition of the "mortgage lending process"
includes "(i) [t]he solicitation, application, origination,
negotiation, servicing, underwriting, signing, closing, and
funding of a mortgage loan; and (ii) the notarizing of any
document in connection with a mortgage loan." Id. § 7-401(e)(2)
(West 2012). Although Chase seeks to curtail the breadth of the
statute to exclude loan servicing with regard to defaulting
borrowers, this Court has held that "the plain language of the
statute clearly countenances post-closing servicing activities."
Stovall, 2011 WL 4402680, at *10. Chase concedes that
foreclosure is a "post-servicing activity" under the MMFPA.
(See Def.'s Reply at 9).

In Stovall, this Court held that the plaintiff's
allegations regarding the bank's substitute trustee's use of
fraudulent affidavits in a foreclosure action was sufficient to
plead a plausible violation of the MMFPA. Stovall, 2011 WL
4402680, at *10. Identical to the instant case, Stovall alleged

that the same Substitute Trustee involved in Mr. Marchese's
Foreclosure Action filed and notarized various documents with
deliberate misstatements as to the documents' true signatories.
Id.  Those allegations were sufficient to plead a violation of
the MMFPA.  Id.  Nevertheless, in the present case, Mr. Marchese
pled no injury related to the Foreclosure Action except for
foreclosure fees.  Because Mr. Marchese concedes he was in
default in June 2009, Chase had a right to foreclose, including
any associated fees.  In Stovall, the foreclosure action was
prosecuted, a foreclosure sale was initiated, and the plaintiff
received an eviction notice.  Id. at *2-3.  Here, the
Foreclosure Action was never prosecuted and was voluntarily
dismissed by Chase.  Thus, the Court finds there is no
controversy under the MMFPA regarding the Foreclosure Action in
this case.

In Stovall, however, the only reason the Court dismissed
the plaintiff's claims regarding loan modification and
reinstatement was because the Court found that the plaintiff
failed to meet the pleading standard under the MCPA.  Id.  The
grounds for denying the Motion to Dismiss with respect to the
loan modification and reinstatement under the MMFPA involve the
same analysis the Court conducted under the MCPA.  Because Chase
appears to concede that Mr. Marchese sufficiently pled Chase's
knowledge of misleading or false statements under the MCPA, and

because the Court previously determined that Mr. Marchese sufficiently pled actual loss or injury under the MCPA, Mr. Marchese also sufficiently pled a claim under the MMFPA. <u>Cf.</u> <u>Zervos v. Ocwen Loan Servicing, LLC</u>, No. 1:11-CV-03757-JKB, 2012 WL 1107689, at *5 (D.Md. Mar. 29, 2012) (dismissing plaintiff's MMFPA claim where plaintiffs did not allege conduct by any particular defendant or allege defendant had knowledge of statement's falsity).

Consequently, the Court grants Chase's Motion to Dismiss Count III with respect to the Foreclosure Action, but denies Chase's Motion to Dismiss Count III with respect to the loan modification and reinstatement.

**4.    Declaratory and Injunctive Relief Claims (Count IV)**

The Court denies Chase's Motion for Declaratory Judgment, and dismisses Count IV *sua sponte* because Mr. Marchese lacks standing to bring this claim.[10]

---

[10] The U.S. Court of Appeals for the Fourth Circuit has held that "standing concerns must be brought out by a court at any time during a proceeding, for without proper standing there would exist no case or controversy for a court to decide." <u>Allstate Ins. Co. v. Adkins</u>, No. 90-2321, 1991 WL 77673, at *3 (4th Cir. May 15, 1991). Thus, it is proper for the Court to raise the issue of standing *sua sponte*, regardless of whether standing was raised by either party in a case. <u>Juidice v. Vail</u>, 430 U.S. 327, 331 (1977) ("Although raised by neither of the parties, we are first obliged to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Art. III."); <u>Dan River, Inc. v. Unitex Ltd.</u>, 624 F.2d 1216, 1223 (4th Cir. 1980) ("[W]hether raised or not,

Mr. Marchese seeks a declaration that the power of sale in the DOT is of no effect because a proper trustee was not named in the instrument.[11]   In support of his Motion, Mr. Marchese contends that the DOT names a corporate trustee, and that the Maryland statute permitting a power of sale requires action by a natural person whose name appears in the deed of trust. Moreover, Mr. Marchese contends that, S.B. 562, the curative statute that would permit enforcement of the power of sale, is unconstitutional.

Chase contends that this issue was recently decided adversely to Mr. Marchese in Svrcek v. Rosenberg, 40 A.3d 494, 513 (Md.Ct.Spec.App. 2012), cert. denied, 50 A.3d 608 (Md. 2012) (holding that (1) "plaintiff voluntarily agreed to the potential substitution of trustees and the grant of the power of sale to a trustee when he signed the deed of trust"; and (2) "[t]he legislation allowing a mortgagee to substitute an individual as a trustee to act on its behalf upon default by a mortgagor does not infringe upon any vested property right.").

Separately, in his Reply to Defendant's Opposition to Plaintiff's Motion to Remand, Mr. Marchese concedes that he

---

jurisdictional standing is an issue to be considered *sua sponte* by the court.").

[11] "A power of sale is a type of foreclosure allowing the mortgage holder to sell the property privately, with limited judicial involvement." Chalk, 2012 WL 2915289, at *3 (citing Anderson v. Burson, 35 A.3d 452, 460 n.14 (Md. 2011).

lacks standing to bring the claims in Count IV of the Complaint because the 2009 Foreclosure Action against the Property was dismissed and no new foreclosure action was pending at the time he filed the Complaint. (<u>See</u> Reply to Mot. to Remand at 8).

A plaintiff has standing if (1) he or she has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) the injury is caused by the conduct of the defendant; and (3) it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision of the Court. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

In <u>Chalk</u>, there was no existing effort to enforce the plaintiff's deed of trust through a power of sale foreclosure when she filed her Complaint. As a result, this Court held that Chalk lacked standing to challenge the validity of the power of sale in her deed of trust, noting that "[e]ssentially, Chalk seeks an advisory opinion as to whether any future attempt at power of sale foreclosure would be valid under Maryland law." <u>Chalk</u>, 2012 WL 2915289, at *3. That militates against the purpose of a declaratory judgment. <u>See</u> <u>Coffman v. Breeze Corps.</u>, 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen.").

Here, there was no existing effort to enforce Mr. Marchese's DOT through a power of sale foreclosure when he filed his Complaint. Consequently, the Court denies Chase's Motion for Declaratory Judgment regarding Count IV, but nevertheless dismisses Count IV *sua sponte* for lack of standing.

### IV. CONCLUSION

For the foregoing reasons, Chase's Motion to Dismiss (ECF No. 11) is GRANTED as to Count I, GRANTED as to the Foreclosure Action referenced in Counts II and III, but DENIED with respect to the loan modification and reinstatement referenced in Counts II and III. Additionally, Chase's request for declaratory judgment is DENIED, but Count IV is dismissed *sua sponte* for lack of standing. Finally, Mr. Marchese's Motion to Remand (ECF No. 13) is DENIED, and Chase's Motion for Leave to File a Surreply (ECF No. 24) is DENIED. A separate Order follows.


Entered this 8th day of January, 2013


                                        /s/
                        _____
                        George L. Russell, III
                        United States District Judge